IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

CHET MORRISON CONTRACTORS, LLC,

    Plaintiff,

vs.                                                  Case No.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Chet Morrison Contractors, LLC ("Morrison"), by and through its undersigned counsel, sues defendant, Travelers Casualty and Surety Company of America ("Travelers"), and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Morrison is a foreign limited liability company organized under the laws of Louisiana, maintains its principal place of business in Houma, Louisiana, and is authorized to and does conduct business in the State of Florida.

2. Travelers is a foreign corporation organized under the laws of Connecticut, maintains its principal place of business in Hartford, Connecticut, and is authorized to and does conduct business in the State of Florida.

3. This Court has jurisdiction over this matter pursuant to section 26.012(2)(a), Florida Statutes, as it is an action to recover damages in excess of $50,000, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper in Duval County, Florida, pursuant to section 47.051, Florida Statutes, because Travelers is a foreign corporation doing business in Florida and Travelers'

agent who executed the Payment Bond at issue in this Complaint, Robert T. Theus, is located in Jacksonville, Florida. Venue is also proper in Duval County, Florida, pursuant to section 13.4 of the written subcontract agreement between Morrison and Islands Mechanical Contractor, Inc. ("IMC"), which contains the underlying payment obligation that is the subject of this Complaint, and provides that "Duval County, Florida shall be the proper and exclusive venue for any litigation which arises out of this Subcontract Agreement."

## FACTUAL ALLEGATIONS

5. Morrison is an energy service company based in Houma, Louisiana that provides construction and infrastructure services to companies in the oil and gas and renewable energy industries, including, without limitation, onshore and offshore pipeline installation services.

6. On information and belief, Siemens Government Technologies, Inc. entered into a contract with the United States Navy for the construction of a liquified natural gas ("LNG") regasification facility located at the United States Naval Base at Guantanamo Bay, Cuba (the "Project").

7. On information and belief, Siemens Government Technologies, Inc. entered into a contract with Siemens Energy, Inc. for the design and construction of the Project.

8. On or about August 21, 2019, Siemens Energy, Inc. entered into a contract (the "Prime Contract") with IMC to provide certain services in connection with the construction of the Project.

9. On or about September 20, 2019, IMC, as principal, and Travelers, as surety, issued Payment Bond No. 107151820 (the "Payment Bond") in connection with the Prime Contract and bound themselves, jointly and severally, to Siemens Energy, Inc., as Obligee, to pay for labor and/or materials used, consumed, or incorporated in the performance of the

construction work under the Prime Contract. A true and correct copy of the Payment Bond is attached hereto as **Exhibit "A"** and made a part hereof.

10. On or about July 23, 2020, in furtherance of its Prime Contract with Siemens Energy, Inc., IMC entered into a subcontract agreement with Morrison (the "Subcontract") pursuant to which Morrison agreed to provide certain labor, materials, equipment, and services in connection with the Project, including the installation of two subsea LNG transfer pipelines and two 900-feet pipe spools designed to connect onshore and offshore risers (the "Work") in exchange for $6,250,000.00 from IMC. A true and correct copy of the Subcontract is attached hereto as **Exhibit "B"** and made a part hereof.

11. On or about August 5, 2020, Morrison and IMC entered into Change Order #001 to the Subcontract, establishing a "Revised Milestone Payment Schedule" with payment terms that "shall be made part of the [Subcontract] and supersede any provisions thereof." A true and correct copy of Change Order #001 is attached hereto as **Exhibit "C"** and made a part hereof.

12. Pursuant to the Subcontract and Change Order #001, IMC agreed, *inter alia*, to make seven independent milestone payments to Morrison upon Morrison's completion of certain portions of the Work tied to each milestone payment.

13. On October 4, 2022, Morrison and IMC entered into a confidential settlement agreement (the "Settlement Agreement") to resolve a dispute regarding Morrison's costs to demobilize and remobilize on the Project. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "D"** and made a part hereof.[1]

14. The Settlement Agreement increased the value of the Subcontract to $9,374,980.25, which is comprised of the original subcontract value of $6,250,000.00,

---

[1] The Settlement Agreement expressly permits its use in any action, cause of action, or proceeding to enforce the terms of the Settlement Agreement. **Ex. D**, Settlement Agreement, p. 5 ¶ 8.

previously approved change orders totaling $357,480.25, and a "Lump Sum Settlement Value" of $2,767,500.00.

15. The Settlement Agreement provided that the timing of invoicing and payment terms for remaining Milestone Payments 5, 6, and 7 shall remain unchanged from the original Subcontract, and established milestone payment terms for IMC's payment of the Lump Sum Settlement Value to Morrison, which are set forth, in pertinent part, as follows:

   a. "$1,000,000 to be invoiced upon departure of transportation vessel from [Morrison's] facility. Payment to be made within 5 calendar days upon receipt of said invoice."

   b. "$1,000,000 to be invoiced upon mobilization of manpower to [the Project]. Payment to be made within 5 calendar days upon receipt of said invoice."

   c. "$767,500 to be invoiced upon offshore pipelines being laid, buried, tested, cleaned and having the proper vacuum. Payment to be made within 5 calendar days upon receipt of said invoice."

16. Morrison performed its last Work on the Project on or about July 21, 2023.

17. IMC is also wrongfully withholding payment from Morrison for amounts due Morrison under the Subcontract and Settlement Agreement.

18. All conditions precedent to the relief requested herein have occurred, been performed, or have been waived.

## COUNT I
## PAYMENT BOND CLAIM FOR REMAINING CONTRACT BALANCE

19. Morrison re-alleges and incorporates by reference its allegations in paragraphs 1 through 18 above as if fully set forth herein.

20. This is an action against Travelers for payment of all amounts due Morrison for its Work on the Project, excluding amounts due Morrison for Milestone Payment No. 5, pursuant to the terms of the Payment Bond.

21. The Payment Bond is a common law payment bond and, accordingly, the Payment Bond is enforceable in accordance with its terms.

22. Pursuant to the Payment Bond, Travelers bound and obligated itself to Siemens Energy, Inc. as Obligee, for payment of all work performed under the Prime Contract by a "Claimant" as that term is defined under the Payment Bond.

23. Morrison is a "Claimant" under the Payment Bond because Morrison has a contract with IMC and supplied IMC with labor and/or materials that were actually used, consumed, or incorporated in the performance of the construction work under the Prime Contract.

24. The Payment Bond contains, *inter alia*, the following provision:

> [IMC] and [Travelers] hereby jointly and severally agree with [Siemens Energy, Inc.] that every Claimant as herein defined who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed or materials were furnished by such Claimant may bring suit on this bond, prosecute the suit to final judgment for the amount due under Claimant's contract for the labor and/or materials supplied by Claimant which were used, consumed or incorporated in the performance of the construction work, and have execution thereon.

**Ex. A**, Payment Bond ¶ 2.

25. Pursuant to the terms of the Payment Bond, Travelers is liable to Morrison for all amounts due Morrison for Morrison's Work on the Project, which amount will be determined at trial.

26. Morrison has been required to retain the services of the undersigned attorneys in prosecuting Morrison's claim against the Payment Bond and has agreed to pay the undersigned attorneys a reasonable fee for their services.

27. Pursuant to section 627.756, Florida Statutes, Travelers is liable to Morrison for its reasonable attorneys' fees incurred in the prosecution of this action.

**WHEREFORE**, Morrison demands that judgment be entered in its favor and against Travelers, as surety on the Payment Bond, as follows:

a. Awarding compensatory damages against Travelers, as surety, on the Payment Bond;

b. Awarding prejudgment interest against Travelers, as surety, on the Payment Bond;

c. Awarding attorneys' fees and costs of suit against Travelers, as surety, on the Payment Bond; and

d. Awarding any and all further relief that this Court deems just and proper.

Respectfully submitted,

/s/ *Wm. Cary Wright*
Wm. Cary Wright, Esq.
Florida Bar No. 862797
Brian T. Allen, Esq.
Florida Bar No. 1031200
CARLTON FIELDS, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607-5780
Phone: (813) 229-4135
Fax: (813) 229-4133
Primary Email:
cwright@carltonfields.com
ballen@carltonfields.com
Secondary Email:
jrenaud@carltonfields.com
ddickey@carltonfields.com
tpaecf@carltonfields.com
*Counsel for Chet Morrison Contractors, LLC*